UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
KYLE BIRCH,

                Plaintiff,                    **MEMORANDUM AND ORDER**
                                                                18-CV-839 (PKC)(LB)
    - against-

POLICE OFFICER FRANK DANZI, Shield
#2198, DETECTIVE GENEE PARKER,
Shield #4131, DETECTIVE PATRICK
O'CONNOR, NYPD Badge #2179, POLICE
OFFICER JOHN ROMANO, Shield #17031,
and CITY OF NEW YORK,

                Defendants.
----------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Plaintiff Kyle Birch, appearing *pro se* and proceeding *in forma pauperis*, brings this action, pursuant to 42 U.S.C. § 1983, against Defendants, alleging numerous violations in connection with his August 20, 2014 arrest and subsequent prosecution. For the reasons stated herein, Defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

**I.    Relevant Facts[1]**

Plaintiff alleges that on August 20, 2014, Defendant-Officers John Romano and Frank Danzi of the New York Police City Department ("NYPD"), dressed in plainclothes and without identifying themselves, jumped out of their car, pointed a gun at him, chased him, and ultimately arrested him in connection with a string of burglaries. While he was handcuffed and on the ground,

---

[1] In deciding a motion to dismiss under Rule 12(b)(6), the Court must assume as true the allegations in the complaint. *Littlejohn v. City of N.Y.*, 795 F.3d 297, 306-07 (2d Cir. 2015). The facts in this section are taken from Plaintiff's written complaint (Dkt. 1), as well as his statements made during oral argument, which the Court construes as supplementing his written complaint.

Officer Romano or Danzi dragged him across the parking lot, kicked him, and hit him in the back with an unknown object.

After his arrest, Plaintiff was taken to the 120th Precinct, where he was questioned by Defendant-Detectives Genee Parker and Patrick O'Connor. At some point, an unidentified officer attempted to take a cellphone picture of Plaintiff and when Plaintiff refused, the officer slapped him. Plaintiff claims that he was illegally searched after his arrest. The officers found a forged Social Security card and check in his backpack.

According to Plaintiff, he was charged with five counts of burglary in the second degree, fourteen counts of criminal possession of stolen property, two counts of criminal mischief, two counts of attempted burglary in the second degree, one count of criminal possession of a forged instrument, and sixteen counts of criminal trespass in connection with the burglaries. He was separately charged with one count of criminal possession of stolen property and one count of criminal possession of a forged instrument in connection with the forged check and Social Security Card found in his backpack. Plaintiff claims that he was arraigned twice, once on August 21, 2014, and again in September or October 2014, and indicted on August 26, 2014.[2]

In June 2016, the state court held a suppression hearing concerning a post-arrest statement purportedly written by Plaintiff confessing to the burglaries and other crimes. Plaintiff denied writing the confession. Detectives Parker and O'Connor testified at the suppression hearing that they had witnessed Plaintiff write and sign the confession, and had advised him of his *Miranda* rights. Plaintiff states that a handwriting expert testified at the hearing that the writing on the confession was not a match to Plaintiff's handwriting. Plaintiff claims that this falsified confession

---

[2] As discussed *infra*, there is some confusion about the chronology of Plaintiff's arraignment and indictment, specifically about which charges he was arraigned on at each arraignment.

prompted the prosecutor to dismiss the burglary charges. Plaintiff also claims that, during discovery for the trial, either Officer Danzi or Romano admitted that, at the time of Plaintiff's arrest, he was looking to "arrest anybody that look[ed] like they was looking to do burglaries." The officer testified that he and the other officers had "no description but . . . were looking for a black man with a book bag."

On April 25, 2017, the day his criminal trial was set to begin, Plaintiff pleaded guilty to Criminal Possession of a Forged Instrument in the Second Degree and Criminal Possession of Stolen Property in the Fifth Degree. (Dkt. 29-1.)[3] Plaintiff was sentenced to two to five years' imprisonment. (*Id.*) That same day, the burglary charges were dismissed, purportedly due to a lack of evidence and the falsified confession.

## II. Procedural History

Plaintiff filed the instant complaint on February 5, 2018. (Dkt. 1.) On May 29, 2018, Defendants Danzi, Romano, and the City of New York submitted a letter in anticipation of filing a motion to dismiss.[4] (Dkt. 29.) The Court converted the pre-motion conference letter into a

---

[3] In deciding a motion to dismiss under Rule 12(b)(6), the court may refer "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Therefore, the Court takes judicial notice of Plaintiff's April 25, 2017 convictions described in the Certificate of Indictment attached to Defendants' pre-motion letter. (Dkt. 29-1); *see Christian v. Kelly*, No. 14-CV-07416 (PKC)(SMG), 2016 WL 3162056, at *2 (E.D.N.Y. June 3, 2016).

[4] In his pre-motion conference letter, defense counsel informed the Court that he was not representing Defendants Parker and O'Connor due to their involvement in an ongoing NYPD investigation. Counsel requested that the Court *sua sponte* dismiss the claims against Parker and O'Connor pursuant to the forthcoming motion or, alternatively, stay the time for Parker and O'Connor to answer the complaint as well as stay discovery. (Dkt. 29, at 1 n.1.) The Court declines to stay this matter at this time as to Parker and O'Connor and considers Defendants' motion to dismiss as to all Defendants.

motion to dismiss on June 5, 2018, and held oral argument on the motion on June 27, 2018.

**STANDARD OF REVIEW**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

"In addressing the sufficiency of a complaint, [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).

**DISCUSSION**

In his written complaint, Plaintiff brings the following claims: (1) false arrest, (2) excessive force, (3) unlawful search, (4) malicious prosecution, (5) equal protection, and (6) municipal

4

liability. After oral argument, the Court liberally construes Plaintiff's complaint to also include (7) a right to fair trial claim. Defendants move to dismiss Plaintiff's complaint in its entirety.

### A. Plaintiff's False Arrest/Imprisonment, Excessive Force, and Unlawful Search Claims

Plaintiff's claims for false arrest/imprisonment,[5] excessive force, and unlawful search are dismissed as time-barred. "Section 1983 actions in New York are subject to a three-year statute of limitations, running from the time a plaintiff knows or has reason to know of the injury giving rise to the claim." *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (internal citation omitted). For a false arrest claim, the statute of limitation runs from date that the plaintiff "is bound over by a magistrate or arraigned on charges." *Lynch v. Suffolk Cty. Police Dep't, Inc.*, 348 F. App'x 672, 675 (2d Cir. 2009) (citation omitted). An excessive force claim "accrues when the use of force occurred." *Wharton v. Cty. of Nassau*, No. 07-CV-2137 (RRM)(ETB), 2010 WL 3749077, at *9 (E.D.N.Y. Sept. 20, 2010) (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)). Similarly, an unlawful search claim accrues on the date of the search. *Forbes v. City of New York*, No. 15-CV-3558 (GHW), 2016 WL 6269602, at *3 (S.D.N.Y. Oct. 26, 2016).

It is undisputed that Plaintiff was arrested on August 20, 2014 and arraigned the following day. (Dkt. 29, at 1-2.) Plaintiff also stated during oral argument that the events giving rise to his excessive force and unlawful search claims occurred at the time of and immediately following his arrest, respectively. Therefore, Plaintiff's claims for excessive force and unlawful search accrued on August 20, 2014, the date of his arrest, and his false arrest/imprisonment claim accrued on the date of his arraignment, August 21, 2014. Because Plaintiff did not file the instant complaint until February 5, 2018—nearly three-and-a-half years later—these claims are time-barred.

---

[5] Plaintiff brings separate claims for unlawful arrest and unlawful imprisonment. However, the analysis is the same for both claims and, therefore, the Court will analyze them together. *Jean v. City of New York*, 512 F. App'x 30, 31 (2d Cir. 2013).

5

However, a court may grant equitable relief, such as tolling the statute of limitations, "in the court's discretion . . . upon consideration of all the facts and circumstances." *Medina v. Seiling*, No. 14-CV-6034 (VSB), 2018 WL 1603857, at *5 (S.D.N.Y. Mar. 29, 2018) (quoting *Baldayaque v. United States*, 338 F.3d 145, 150 (2d Cir. 2003)). For Section 1983 claims, the Second Circuit has applied "equitable tolling only in rare and exceptional circumstances, where . . . 'extraordinary circumstances' prevented a party from timely performing a required act, and . . . the party 'acted with reasonable diligence throughout the period [the party seeks] to toll.'" *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (quoting *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004)). Equitable tolling cannot be premised on Plaintiff's "lack of education, *pro se* status, or ignorance of the right to bring a claim." *Watson v. United States*, 865 F.3d 123, 133 (2d Cir. 2017).

Plaintiff has not alleged any extraordinary circumstances warranting equitable relief. At oral argument, Plaintiff stated that he did not file his claims within the statute of limitation because he thought he had to wait until after all of the charges against him were dismissed and that he had five years thereafter to file his complaint. He also stated that he did not file his complaint nearly a year after the burglary charges were dismissed because he spent that time doing legal research to prepare his complaint. Plaintiff's misunderstanding of the correct statute of limitations does not constitute an extraordinary circumstance, nor does Plaintiff's delay in timely filing due to legal research. *See Frederick v. City of New York*, No. 13-CV-897 (MKB), 2016 WL 8711395, at *9-10 (E.D.N.Y. Mar. 25, 2016) (holding that misunderstanding or ignorance of the statute of limitation is not sufficiently extraordinary to grant equitable relief); *Giles v. Smith*, No. 10-CV-5322 (PKC), 2010 WL 4159468, at *3 (S.D.N.Y. Oct. 8, 2010) (finding that unfamiliarity with legal research does not merit tolling). Therefore, the Court declines to grant equitable relief to toll

the statute of limitations, and dismisses Plaintiff's false arrest, excessive force, and unlawful search claims.

## B. Equal Protection

The Court construes Plaintiff's Section 1981 claim as a Section 1983 claim alleging discrimination on the basis of race, age, and gender, in violation of the Equal Protection Clause of the Fourteenth Amendment, against Defendants Romano and Danzi.[6] Based on Plaintiff's written complaint and his statements at oral argument, the Court finds that Plaintiff has alleged discriminatory treatment in violation of the Equal Protection Clause.

"To state a race[, age, or gender]-based claim under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against him on the basis of his race[, age, or gender]." *Brown v. City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir. 2000); *Simmons v. Love*, No. 09-CV-1218 (WWE), 2012 WL 113665, at *5 (D. Conn. Jan. 12, 2012) ("Constitutional claims alleging racial profiling are subject to the analysis of the Fourteenth Amendment Equal Protection Clause."). A claim for equal protection can be established by identifying: a law that facially discriminates on the basis of race, age, or gender; a facially neutral law or policy that is applied in an intentionally discriminatory manner; or a facially neutral policy that has an adverse effect motivated by discriminatory animus. *Pyke v. Cuomo*, 258 F.3d 107, 109 (2d Cir. 2001) (quoting *Brown*, 221 F.3d at 337). Here, although somewhat vague, Plaintiff's

---

[6] Plaintiff brings his claim against state actors and, therefore, "Section 1983, not Section 1981, is the appropriate vehicle through which a plaintiff may pursue discrimination claims for damages." *Zaniewska v. City of New York*, No. 11-CV-2446 (RRM)(VVP), 2013 WL 3990751, at *8 (E.D.N.Y. Aug. 5, 2013), *aff'd*, 569 F. App'x 39 (2d Cir. 2014) (citing *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 734 (1989)). This rule also applies to state actors sued in their individual capacities. *Whaley v. City Univ. of New York*, 555 F. Supp. 2d 381, 400–401 (S.D.N.Y. 2008) ("The holding in *Jett* has been interpreted to encompass . . . individuals sued in their individual capacities who are state actors."). Accordingly, "the Court will resolve [P]laintiff's Section 1981 claim pursuant to Section 1983 standards." *Zaniewska*, 2013 WL 3990751, at *8.

statements at oral argument suggest that he is alleging the discriminatory application of a facially neutral policy. *See Ali v. Connick*, 136 F. Supp. 3d 270, 278 n.5 (E.D.N.Y. 2015) (finding that plaintiff did not "clearly articulate that his claim is based on the discriminatory application theory within the *Pyke* framework, but he [was] not required to do so"); *accord Burwell v. Peyton*, No. 5:12-CV-166, 2013 WL 1386290, at *4 n.3 (D. Vt. Apr. 4, 2013). In *Ali v. Connick*, the plaintiff alleged that a police officer had used excessive force against him based on his ethnicity as a Muslim man, in violation of his right to equal protection. 136 F. Supp. 3d at 277. The court found that the plaintiff had adequately pled his equal protection claim because he had "appear[ed] to allege that a neutral policy—[the] use of force against an arrestee—ha[d] been applied in an intentionally discriminatory manner." *Id.* at 278. Similarly, in *Vilkhu v. City of New York*, the Court considered the equal protection claim of a plaintiff who claimed that the defendant-police officer had assaulted him while questioning and detaining him. No. 06-CV-2095 (CPS)(JO), 2008 WL 1991099, at *3-5 (E.D.N.Y. May 5, 2008). The court found that the plaintiff had sufficiently alleged the discriminatory application of a neutral policy where he "alleged that the officers used an express racial classification when they singled him out because of his Indian origin and applied the neutral policy of detaining someone in an intentionally discriminatory manner." *Id.* at *5.

Here, Plaintiff adequately alleges that a neutral policy—investigating crimes—was applied to him in a discriminatory manner by Defendants Romano and Danzi when they expressly began looking for any young, African-American man with a backpack as the burglary suspect, even though they did not have a description of the perpetrator—as alleged at Plaintiff's suppression hearing. *United States v. Avery*, 137 F.3d 343, 355 (6th Cir. 1997) ("If law enforcement adopts a policy, employs a practice, or in a given situation takes steps to initiate an investigation of a citizen

based solely upon that citizen's race, without more, then a violation of the Equal Protection Clause has occurred."). Therefore, Defendants' motion to dismiss this claim is denied.[7]

## C. Right to Fair Trial

Construing Plaintiff's complaint liberally, Plaintiff alleges that he was denied his right to a fair trial when Defendants Parker and O'Connor falsified Plaintiff's confession.

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). To state a fair trial claim, a plaintiff must allege that "an (1) investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Li v. City of New York*, 246 F. Supp. 3d 578, 628 (E.D.N.Y. 2017) (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 280 (2d Cir. 2016)).

A plaintiff "need not have gone to a full trial on the merits in order to have an actionable [fair trial] claim." *Id.* at 628; *see also Ricciuti*, 124 F.3d at 127 (where plaintiffs brought a fair trial claim based on charges that were dismissed pretrial). Therefore, a plaintiff can sustain a right to fair trial claim even where the fabricated evidence was not, in fact, presented to a jury. *Jordan v. City of New York*, No. 15-CV-6364 (CM), 2017 WL 3106453, at *3-4 (S.D.N.Y. July 17, 2017). The proper inquiry is whether the "information would likely influence the jury *if* it arrived at a

---

[7] Moreover, because Defendants have failed to make any arguments in their motion to dismiss or at oral argument regarding the timeliness of Plaintiff's equal protection claim, the Court will consider the limitations defense waived. *Santos v. Dist. Council of New York City & Vicinity of United Bhd. of Carpenters & Joiners of Am., AFL-CIO*, 619 F.2d 963, 967 n.5 (2d Cir. 1980) ("Waiver will generally be found . . . if the limitations defense is not included in a pleading at the earliest possible moment.") (internal quotation marks omitted) (collecting cases).

jury." *Id.* at *3 (emphasis in original); *see also Nnodimele v. Derienzo*, No. 13-CV-3461 (ARR)(RLM), 2016 WL 337751, at *12 (E.D.N.Y. Jan. 27, 2016). False confessions are "almost certain to influence a jury's verdict" because they serve as "potent proof of wrongdoing" and "are virtually guaranteed to make it to a jury table during deliberation." *Buie v. City of New York*, No. 12-CV-4390 (RJD)(CLP), 2015 WL 6620230, at *10 (E.D.N.Y. Oct. 30, 2015) (internal quotation marks omitted); *see also Marlin v. City of New York*, No. 15-CV-2235 (CM), 2016 WL 4939371, at *16 (S.D.N.Y. Sept. 7, 2016). Proof that a police officer forwarded the falsified evidence to a prosecutor can be inferred from a prosecutor's reliance on the evidence in pre-trial proceedings. *Loftin v. City of New York*, No. 15-CV-5656 (MKB), 2017 WL 3614437, at *8-9 (E.D.N.Y. Aug. 21, 2017) (holding that the similarities between the arrest report and criminal complaint supported the inference that police had forwarded falsified evidence to the prosecutor); *see also Higazy v. Templeton*, 505 F.3d 161, 177-78 (2d Cir. 2007) (holding that the prosecutor's reliance on the falsified evidence at the plaintiff's bail hearing raised a genuine issue of fact as to whether a police officer forwarded falsified evidence). To satisfy the fifth element, a plaintiff need not establish that the falsified evidence was the only reason that plaintiff suffered a deprivation of liberty; rather, the Second Circuit has held that "a further deprivation of liberty can result from the fabrication of evidence even if the initial arrest is lawful." *Garnett*, 838 F.3d at 277.

Accepting Plaintiff's allegations as true, his complaint contains sufficient non-conclusory allegations to state a fair trial claim. Plaintiff alleged that Defendants Parker and O'Connor testified at the suppression hearing that they witnessed Plaintiff write and sign the confession. Plaintiff denies making any such confession and claims that a handwriting expert found that the handwriting on the confession did not match Plaintiff's handwriting. Notwithstanding the results of the suppression hearing, the falsified confession, admitting to the burglaries and other crimes,

10

would certainly influence a jury if presented to it. The Court can also plausibly infer that Defendants forwarded the confession to prosecutors at some point after he was arrested because it was the subject of the suppression hearing. *Higazy*, 505 F.3d at 177-78.

With respect to the deprivation of liberty prong, Plaintiff has alleged that he was arraigned on two different occasions and neither party was able to state definitively whether, during his first arraignment, Plaintiff was arraigned on *both* the burglary charges and the charges for possession of a forged instrument and stolen property. If Plaintiff was only arraigned on the burglary charges on August 21, 2014, and was not arraigned on the possession charges until September, then Plaintiff suffered sufficient post-arraignment confinement in between his arraignments to state a right to fair trial claim. *See Folk v. City of New York*, 243 F. Supp. 3d 363, 373 (E.D.N.Y. 2017) (recognizing that post-arraignment incarceration constituted a "post-arraignment deprivation of liberty"); *Douglas v. City of New York*, 595 F. Supp. 2d 333, 343 (S.D.N.Y. 2009) (same). Given this uncertainty, the Court denies Defendants' motion to dismiss as to this claim.

### D. Malicious Prosecution

Plaintiff argues that he was maliciously prosecuted on the burglary charges. To sustain a Section 1983 claim for malicious prosecution, "a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (quoting *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995)). Plaintiff must also allege some "post-arraignment deprivation of liberty" that is made "pursuant to legal process." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995).

With respect to Defendants Parker and O'Connor, the Court finds that Plaintiff has sufficiently alleged that they perpetuated Plaintiff's prosecution by preparing an allegedly falsified confession and forwarding it to the prosecutor. *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010) (quoting *Ricciuti,* 124 F.3d at 130). With respect to Defendants Romano and Danzi, Defendants argue that they were not personally involved in the initiation of Plaintiff's prosecution. However, at oral argument, Plaintiff stated that they were "called to the stand during the suppression hearing . . . [and] they changed their stories to make it even more damaging [to Plaintiff,] knowing [he] didn't do the crimes." In light of Plaintiff's allegations that Defendants Romano and Danzi lied during the suppression hearing, Plaintiff satisfies the first prong. *See Bailey v. City of New York*, 79 F. Supp. 3d 424, 449 (E.D.N.Y. 2015) (holding that allegations that the police "failed to make a complete and full statement of facts to the District Attorney, misrepresented or falsified evidence, withheld evidence or otherwise acted in bad faith" satisfied the initiation element of malicious prosecution) (quoting *Manganiello*, 612 F.3d at 160).

With respect to the second prong, a proceeding is favorably terminated "only when its final disposition is such as to indicate the innocence of the accused." *Murphy*, 118 F.3d at 948. This is a fact-specific inquiry and, here, the Court does not possess sufficient facts to determine whether the burglary charges were favorably terminated. *Id.* at 950-51, 955 n.3. Defendants conceded at oral argument that they do not have the state court record and do not know the precise circumstances of the dismissal of the burglary charges. Additionally, Plaintiff alleges that the burglary charges were dismissed due to a lack of evidence and the falsified confession. The Court finds that these allegations, given the absence of any contrary evidence of which the Court could take judicial notice at this stage, are sufficient to survive a motion to dismiss. *Li*, 246 F. Supp. 3d at 610 (collecting cases where the plaintiffs overcome motions to dismiss based on the uncertainty

12

surrounding the dismissal of charges against them); *see also Peros v. Castano*, No. 01-CV-4457 (JG), 2002 WL 603042, at *4 (E.D.N.Y. Mar. 22, 2002) (denying defendant's motion to dismiss where there was "some uncertainty as to the precise basis of the state court's dismissal of the criminal charges" such that the Court could not conclude that there was "no set of facts on which plaintiff could satisfy the favorable termination element"). Therefore, Plaintiff satisfies the second factor.

With respect to the third and fourth factors, an indictment generally creates the presumption of probable cause, which serves as a complete defense to a malicious prosecution claim. However, evidence that the "indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith" can overcome this presumption. *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). Furthermore, a lack of probable cause creates an inference of actual malice. *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003). Here, as previously explained, the Court finds that Plaintiff has alleged sufficient facts to infer that Defendants lied about his confession in order to secure an indictment and to overcome the presumption of probable cause. Finally, for the reasons stated *supra* regarding the uncertainty surrounding Plaintiff's arraignments, the Court finds that Plaintiff has alleged a post-arraignment deprivation of liberty. Therefore, Defendants' motion to dismiss Plaintiff's malicious prosecution claim is denied.

### E. *Monell* Claim

Finally, Plaintiff alleges that he was falsely arrested because the NYPD had a policy or practice of using vague criteria to arrest any African-American man with a book bag. In light of the dismissal of Plaintiff's false arrest claim, Plaintiff's *Monell* claim must also be dismissed. Under Second Circuit case law, "a prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor. '*Monell* does not provide a separate cause of action for

the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.'" *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010) (quoting *Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original)). Once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [is] entirely correct." *Segal*, 459 F.3d at 219. Therefore, having found that Plaintiff's false arrest claim does not survive, the Court dismisses his *Monell* claim based on that alleged constitutional deprivation, and terminates the City of New York as a party in this action.

## CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss is granted in part and denied in part. Plaintiff's claims for false arrest, excessive force, unlawful search, and municipal liability are dismissed. Plaintiff's claims for malicious prosecution (against all four individual Defendants), equal protection (against Officers Danzi and Romano), and right to fair trial claim (against Detectives Parker and O'Connor) will move forward. The City of New York is terminated as a party in this action.

SO ORDERED.

   /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: July 26, 2018
      Brooklyn, New York